UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KASHIF MCDONALD,

       Plaintiff,

 -v-                 9:15-CV-141

CAPTAIN T. ZERNIAK, Upstate Correctional
Facility, SUPERINTENDENT DAVID ROCK,
Upstate Correctional Facility, and ALBERT
PRACK, Director, Special Housing/Inmate
Disciplinary Program, DOCCS,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:            OF COUNSEL:

OFFICE OF ALAN D. LEVINE      ALAN D. LEVINE, ESQ.
Attorneys for Plaintiff
80-02 Kew Gardens Road, Suite 307
Kew Gardens, NY 11415

HON. ERIC T. SCHNEIDERMAN     BRIAN W. MATULA, ESQ.
Attorney General for the State of New York  Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

    Plaintiff Kashif McDonald ("McDonald" or "plaintiff"), an inmate in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"), filed this

action pursuant to 42 U.S.C. § 1983 alleging that defendants Theodore Zerniak ("Zerniak"),

David Rock ("Rock"), and Albert Prack ("Prack"), three prison officials involved in administering and reviewing a disciplinary proceeding at which plaintiff was found guilty of assaulting a fellow inmate, violated his Fourteenth Amendment right to procedural due process by impermissibly relying on information from a confidential informant.

Zerniak, Rock, and Prack (collectively "defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[1]

On February 10, 2012, at around 3:35 p.m., Saul Angulo, an inmate housed at Elmira Correctional Facility ("Elmira CF"), was in a recreation space known as the "G Block Flats" when he was cut "across the side of his face" by another, but then-unknown, inmate.

Three days later, on February 13, 2012, Elmira CF Corrections Sergeant J. Powers authored an Inmate Misbehavior Report alleging that McDonald was Angulo's assailant in the flats that day. Zerniak Decl. Ex. A. According to the Misbehavior Report, Sergeant Powers had received "confidential information from a reliable source" who had witnessed the incident and who had later identified plaintiff "from a photo display." Id. The Inmate Misbehavior Report charged plaintiff with a violation of prison disciplinary rule 100.10, which prohibited assault on an inmate. Id. Plaintiff was served with a copy of this Inmate Misbehavior Report the next day.

On February 27, 2012, prison officials at Elmira CF conducted an Administrative Tier III disciplinary hearing on the assault charge alleged in the Inmate Misbehavior

---

[1] Unless otherwise noted, the facts recited here have been admitted by McDonald in his response to defendants' Statement of Material Facts filed pursuant to Local Rule 7.1(a)(3).

Report. McDonald was found guilty at this hearing and then transferred to Upstate Correctional Facility ("Upstate CF") to serve his punishment as well as continue his underlying term of incarceration. After plaintiff was transferred to Upstate CF, the outcome of the disciplinary hearing held at Elmira CF was reversed by DOCCS's Office of Special Housing and Inmate Discipline, whose representatives reviewed the hearing materials and determined that prison officials had failed to "maintain a complete electronic record" of the proceeding. Prack Decl. Ex. A.

On May 3, 2012, Prack, the Director of Special Housing and Inmate Discipline, issued a memorandum ordering a rehearing on the assault charge alleged in the Inmate Misbehavior Report. McDonald, still housed at Upstate CF, was served with a new copy of the charge on May 5 and, on May 7, met with an employee assistant who helped him prepare for the renewed disciplinary proceeding against him.

On May 21, 2012, the rehearing commenced with Zerniak, a Captain at Upstate CF, serving as the Hearing Officer.[2] McDonald pleaded not guilty to the assault charge and insisted he had been completely unaware that Angulo had even been attacked that day. At plaintiff's request, Hearing Officer Zerniak adjourned the proceeding for three days so that certain witnesses could be lined up to testify.

---

[2] The rehearing transcript is attached as Exhibit B to the Zerniak Declaration. McDonald admits this, but in his response to defendants' statement of material facts he "avers that it is of such poor quality as not to accurately represent the testimony offered at the hearing." This averment is rejected for four reasons. First, plaintiff agreed at his deposition that this transcript was "a complete and accurate record of the hearing" at issue. Second, beyond the "photo display" dispute that will be addressed below, plaintiff has failed to identify which, if any, portions of the transcript lend themselves to an inaccurate representation of the hearing testimony. Third, and relatedly, plaintiff has not identified any admissible evidence in the record that might serve to raise a genuine dispute of fact over any of the testimony that was offered at the rehearing. Fourth, an independent review of the document reveals that although it contains the typical errors attendant to a written transcription of an audio recording, the substance of the document itself is aligned with the undisputed facts here.

On May 24, 2012, the rehearing continued. McDonald called two inmate witnesses to testify on his behalf and submitted documentary evidence in the form of a drawing of the cell block at Elmira CF in which he resided at the time the assault occurred. Hearing Officer Zerniak then heard testimony from Sergeant Powers, the author of the Inmate Misbehavior Report at issue:

>Zerniak: Okay . . . . according to the report you received confidential information from an inmate that inmate Mcdonald was identified through a photo display of the inmate who assaulted [ ] inmate Angulo?
>
>Powers: Yes.
>
>Zerniak. Okay. And you used this inmate in the past, you found him to be reliable?
>
>Powers. Yes.
>
>. . . .
>
>Zerniak: You your inmate that gave you the confidential information, did he have [ ] any prior dealings with inmate Mcdonald or did he know who he was?
>
>Powers: No.
>
>. . . .
>
>Zerniak: Well what . . . brought you to do the photo raid [*sic*]? Did the confidential um inmate give you confidential information, did he know who it was that did the assault?
>
>Powers: He knew what cell he was locked in.

Hearing Officer Zerniak also heard testimony from Elmira CF Corrections Officer K. Erickson, one of the prison officials who had been in charge of supervising the G Block Flats

the day of the incident. Officer Erickson testified that he had not personally witnessed the assault in the flats but that Angulo had approached him after the recreation period "with a bloody face." McDonald was permitted to ask questions of both Sergeant Powers and Officer Erickson.

At the conclusion of the rehearing, Hearing Officer Zerniak found McDonald guilty of the assault charge and imposed a penalty of twelve months' disciplinary confinement in the Special Housing Unit ("SHU"), loss of package, commissary, and phone privileges for twelve months, and loss of twelve months of good time credit.

Hearing Officer Zerniak stated that the "[e]vidence relied upon" in reaching this determination was "the written report of the staff member [who] was found to be credible [as well as] the testimony that the confidential informant has been used in the past by Sergeant Powers and has been reliable."

McDonald was then provided with a written statement of Hearing Officer Zerniak's determination. Thereafter, Rock, the Upstate CF Superintendent, reviewed the results of the rehearing and determined that the hearing was complete "and that the penalty imposed was within the guidelines for the misbehavior conducted."

On June 24, 2012, the Office of Special Housing and Inmate Discipline received an administrative appeal from McDonald challenging Hearing Officer Zerniak's reliance on Sergeant Powers's confidential informant. Director Prack's office rejected plaintiff's appeal and affirmed. Plaintiff sought reconsideration of this disposition on February 14, 2013 but was again rebuffed by Director Prack's office on April 16, 2013. Plaintiff then commenced an Article 78 proceeding in Supreme Court, Albany County, which transferred plaintiff's petition to the Appellate Division, Third Department, for review.

On July 12, 2013, while this Article 78 proceeding was still pending before the Appellate Division, the Office of Special Housing and Inmate Discipline issued a memorandum administratively reversing and expunging the outcome of McDonald's rehearing "per conversation with the attorney general's office." According to a memorandum from Director Prack's office, this action was taken because "the record fails to indicate that the hearing officer assessed the reliability and credibility of the confidential source."

On November 27, 2013, the Appellate Division dismissed McDonald's Article 78 petition as moot in light of this administrative expungement. Matter of McDonald v. Fischer, 111 A.D.3d 1207 (N.Y. App. Div. 3d Dep't 2013). By that time, however, plaintiff had already been released from SHU, having served approximately thirteen months in special confinement. This action followed.

## III. LEGAL STANDARDS

### A. Summary Judgment

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson, 477 U.S. at 247.

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n. 4. The failure to meet this burden warrants denial of the motion. Id. However, in the event this initial burden is met, the opposing party must then show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. In sum, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. 42 U.S.C. § 1983

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). However, "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). Accordingly, to prevail on a § 1983 claim, a plaintiff must show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. See 42 U.S.C. § 1983.

### C. Supervisory Liability

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Odom v. Matteo, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

"The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." Odom, 772 F. Supp. 2d at 403 (quoting Colon, 58 F.3d at 873); see also Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014) (noting that the continued vitality of all five Colon factors set forth above remains an open question post-Iqbal).

## IV. DISCUSSION

McDonald's sole claim, brought pursuant to 42 U.S.C. § 1983, alleges that Hearing Officer Zerniak violated his right to procedural due process because he failed to independently assess the reliability and credibility of the confidential informant who identified plaintiff as Angulo's attacker. Plaintiff further alleges that Superintendent Rock and Director Prack were "personally involved" in this due process violation because both of these defendants reviewed the results of the rehearing and therefore participated to some extent in

- 8 -

the denial of plaintiff's administrative challenges to his conviction. Defendants respond that the May 2012 rehearing satisfied the procedural demands of due process in the prison disciplinary context; alternatively, they raise the shield of qualified immunity.

The Due Process Clause of the Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Prisoners retain rights under the Due Process Clause of the Fourteenth Amendment, but those rights are somewhat muted by the institutional concerns inherent in a correctional system." Whitley v. Miller, 57 F. Supp. 3d 152, 158 (N.D.N.Y. 2014) (quoting Zavaro v. Coughlin, 970 F.2d 1148, 1152 (2d Cir. 1992)).

As relevant here, prison inmates are still "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement," Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citation omitted), provided that those liberty deprivations amount to "an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Luna v. Pico, 356 F.3d 481, 487 n. 3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Here, McDonald spent approximately thirteen months in SHU confinement and, for purposes of this motion at least, defendants concede that this period of further deprivation implicated plaintiff's protected liberty interest and thus triggered the procedural safeguards of due process. See, e.g., Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections . . . ."); Molano v. Bezio, 42 F. Supp. 3d 465, 468 (W.D.N.Y. 2012) (noting twelve months' confinement in SHU is a "sufficient" deprivation to trigger due process inquiry).

In a prison disciplinary proceeding like the one at issue here, the procedural safeguards required by due process include "advance written notices of the charges . . . ; a hearing affording a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira, 380 F.3d at 69 (quoting Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)).

"[T]he Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" Whitley, 57 F. Supp. 3d at 158 (quoting Sira, 380 F.3d at 69). "Judicial review of this 'some evidence' standard is narrowly focused." Sira, 380 F.3d at 76. As the Supreme Court has explained, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455 (1985).

Notably, neither the Second Circuit nor the Supreme Court "has clearly defined standards for determining what constitutes 'some evidence' in the context of prison disciplinary hearings; rather, decisions have addressed the problem piecemeal, focusing on the discrete problems raised by the facts of particular cases." Woodard v. Shanley, 505 F. App'x 55, 57 (2d Cir. 2012) (summary order) (quoting Sira, 380 F.3d at 81).

However, the Second Circuit has explained that "implicit in the 'some evidence' requirement[ ] is the mandate that the evidence be 'reliable.'" Molano, 2012 WL 1252630, at *4; see also Luna, 356 F.3d at 488 (collecting cases). For example, when the evidence at

issue comes from a confidential informant, the Second Circuit has held that this "some reliable evidence" standard requires a prison hearing officer to "independently assess the credibility of the informant[ ], considering the totality of the circumstances."  Sowell v. Weed, 2013 WL 3324049, at *11 (W.D.N.Y. July 1, 2013) (citing Sira, 380 F.3d at 78); see also Ayers v. Selsky, 2010 WL 408442, at *8 (N.D.N.Y. Jan. 27, 2010) (McAvoy, J.) (citing Sira, 380 F.3d at 78) (noting that when "confidential information is comprised of multiple levels of hearsay, hearing officers must consider a 'totality of the circumstances' to determine the reliability of such information"), aff'd, 467 F. App'x 45 (2d Cir. 2012) (summary order).

However, "the hearing officer is *not* required to personally interview or question the confidential informant, and may rely solely on the informants' hearsay statements."  Sowell, 2013 WL 3324049 at *12 (emphasis in original); see also Russell v. Scully, 15 F.3d 219, 223 (2d Cir. 1993), as modified on denial of reh'g, (Jan. 3, 1994) ("Neither due process nor applicable precedent compels that a hearing officer . . . conduct personal interviews of confidential informants.").  In fact, even a disciplinary conviction based *solely* on evidence supplied by a confidential informant may satisfy this standard "as long as there has been some examination of indicia relevant to [the confidential informant's] credibility."  Id. at *11 (quoting Giakoumelos v. Coughlin, 88 F.3d 56, 61 (2d Cir. 1996)).

With the contours of this relatively low standard in mind, McDonald's procedural due process claim must fail.  At the rehearing, Hearing Officer Zerniak made basic inquiries into the reliability and credibility of the confidential informant, eliciting facts that bore on those two issues as well as Sergeant Powers's own opinion about his informant's usefulness under these circumstances.  See Russell, 15 F.3d at 223 ("The question, 'Has this informant a

history of reliability?' differs from the question 'Do you believe the informant?' The former seeks to elicit matters of historic fact while the latter calls for an opinion.").

As defendants correctly note, Sergeant Powers's testimony established that the confidential informant had provided reliable information directly to him in the past, had not been involved in any prior dealings with McDonald, and had identified plaintiff both by the particular cell he was locked in as well as through the use of photo identification. Although fairly brief in total, Hearing Officer Zerniak's questioning, which also included an inquiry into whether the informant might have possessed a motive to harm plaintiff, was sufficient to satisfy the "not-very-demanding" standard at issue here. Sowell, 2013 WL 3324049, at *11 (finding this low standard "exceeded" where hearing officer took direct, but private, testimony from confidential informant who "provide[d] details and specifics and d[id] not appear to be motivated by a desire to harm [the inmate]"); see also Campo v. Keane, 913 F. Supp. 814, 825 (S.D.N.Y. 1996) (finding credibility component of the "some evidence" standard satisfied where hearing officer simply questioned investigating officers "about the reliability of the informants" upon whose information they had relied).

McDonald's opposition brief seeks to have the "some reliable evidence" standard elevated to something more closely resembling the procedural due process protections enjoyed by an accused in an ordinary criminal proceeding. For instance, plaintiff argues that Hearing Officer Zerniak failed to elicit additional, more detailed information from Sergeant Powers about his confidential informant, such as a recitation of how many times the informant had proved reliable, whether the informant had ever proved *unreliable*, or even in what sort of circumstances he had previously been used as an informant.

- 12 -

But although the more thorough inquiry urged by McDonald may be the best theoretical practice, it is not the constitutionally mandated one. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (holding that a prison inmate does not enjoy "the full panoply of rights" accorded to a defendant in a criminal prosecution). As the Second Circuit has recognized, prison disciplinary hearings are not "truly adversarial in nature" since, among other things, these proceedings "rely heavily on hearsay, including unverifiable information from prison guards and informants." Young v. Selsky, 41 F.3d 47, 53 (2d Cir. 1994) (citation omitted); see also Sira, 380 F.3d at 78 (acknowledging "the substantial risks for violence and retaliation in connection with prison disciplinary actions").

In light of these practical realities, reviewing courts have consistently declined to find procedural due process violations in the prison disciplinary context except in those few instances where the hearing officer failed to conduct *any* independent inquiry into an informant's reliability or credibility. See Ortiz v. McBride, 380 F.3d 649, 651, 655 (2d Cir. 2004) (concluding inmate stated plausible procedural due process claim where he alleged that "only evidence" offered at disciplinary hearing was mere accusation of misconduct by confidential informant); McCallister v. Call, 2014 WL 5475293, at *14 (N.D.N.Y. Oct. 29, 2014) (Scullin, J., adopting Report-Recommendation of Hummel, M.J.) (denying summary judgment to hearing officer where record lacked any indication of "whether or how he performed an assessment of the [confidential] witness's credibility"); Dawkins v. Gonyea, 646 F. Supp. 2d 594, 610 (S.D.N.Y. 2009) (granting pro se plaintiff leave to replead a procedural due process claim where hearing officer appeared to have "relied solely on a third party's evaluation of the informant's credibility"); see also Broussard v. Johnson, 253 F.3d 874, 875 (5th Cir. 2001) (per curiam) (affirming conditional grant of habeas relief from prison

disciplinary board's adverse determination where investigating officer who supplied informant's story to the board "had not interviewed the informant personally, and did not know the identity of the informant or anything about the informant").

That is not the case here. In addition to the inquiries set forth above, the rehearing transcript also reflects that Hearing Officer Zerniak stated "I haven't made a decision on that yet" in response to McDonald's insistence that "Okay so if the Sergeant that wrote th[e Misbehavior Report] say that the um confidential informant is um credible and reliable it is to you as well." See Sowell, 2013 WL 3324049, at *11 (finding hearing officer's on-the-record statement that he had made an independent assessment of reliability after considering informant's basis of knowledge and possible ulterior motives to be sufficient to satisfy the "some evidence" standard).

McDonald further argues Hearing Officer Zerniak failed to elicit sufficiently detailed testimony to establish the substance of the "photo display" that was shown to the confidential informant. According to plaintiff, the transcript of the rehearing suggests that only one photograph, rather than an array, may have been shown to the confidential informant, which would have rendered the procedure unduly suggestive. See Pl.'s Opp'n Mem. at 9 (citing Raheem v. Kelly, 257 F.3d 122, 143 (2d Cir. 2001) (discussing undue suggestiveness in context of § 2254 petition and conditionally ordering dismissal of criminal charges pending a new trial in state court); United States v. Thai, 29 F.3d 785, 800 (2d Cir. 1994) (discussing due process requirements of photographic arrays on direct appeal from criminal conviction); Mysholowsky v. New York, 535 F.2d 194, 196-97 (2d Cir. 1976) (discussing due process demands of photographic identifications and line-ups in context of § 2254 petition)).

This line of authority is distinguishable as well, since each of these cases discuss the procedural protections that due process affords a party to a criminal proceeding, not the decidedly more limited procedural safeguards that govern administrative penalties imposed by prison officials seeking to maintain order in a carceral setting. Giakoumelos, 88 F.3d at 62 ("[T]he requirements of prison security are unique."). In further response to this argument, defendants have also submitted a reply declaration from Hearing Officer Zerniak, who explains that the terms "display" and "array" are considered interchangeable by DOCCS personnel since both are understood to involve the practice of showing the witness a total of six photographs. Zerniak Reply Decl. ¶ 7.

But even assuming Hearing Officer Zerniak's reply declaration is not properly a part of the summary judgment record, his questioning of Sergeant Powers at the rehearing elicited other bases on which to conclude that "some reliable evidence" supported his determination that the confidential informant was credible and reliable in this case—the informant had a past record of reliability, did not have any prior dealings with McDonald, had identified plaintiff by the cell he was locked in, and did not have an apparent motive to falsely implicate plaintiff. See Ayers, 2010 WL 408442 at *8 ("The facts that [the investigating officer] had worked with the informant on multiple occasions and that the informant had thus far been reliable . . . compel the conclusion that a proper credibility determination was made.").

Finally, to the extent McDonald might seek to have an adverse inference drawn against defendants based on the administrative expungement of the rehearing determination that occurred during the pendency of his Article 78 proceeding, it bears noting that New York State's standard of review in these cases, which requires "sufficiently relevant and probative" information "to constitute substantial evidence," Foster v. Coughlin, 76 N.Y. 2d 964 (N.Y.

1990), is a burden of proof that is distinct from, and "considerably stricter than[,] the Federal 'some evidence' standard" required to establish the sort of due process claim pressed by plaintiff in this case. Sowell, 2013 WL 3324049 at *13 (citing Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)). Accordingly, plaintiff's procedural due process claim must be dismissed.

## V. CONCLUSION

Hearing Officer Zerniak conducted "some examination of indicia relevant to [the confidential informant's] credibility." Giakoumelos, 88 F.3d at 61. Because the testimony this examination elicited satisfies the "some reliable evidence" standard that must be met in prison disciplinary proceedings, it is unnecessary to discuss whether defendants Rock or Prack might have been "personally involved" in rejecting McDonald's administrative challenges to his punishment. See, e.g., Wesolowski v. Harvey, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011) (rejecting supervisory liability claim where plaintiff failed to establish underlying constitutional violation).

In light of these conclusions, it is equally unnecessary to examine whether one or more of the defendants might nevertheless be entitled to qualified immunity. See, e.g., Woodard, 505 F. App'x at 57 ("Even if a disciplinary disposition is not supported by 'some evidence,' state officials are entitled to qualified immunity from civil liability for actions performed in the course of their duties insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

Therefore, it is

ORDERED that

1990), is a burden of proof that is distinct from, and "considerably stricter than[,] the Federal 'some evidence' standard" required to establish the sort of due process claim pressed by plaintiff in this case. Sowell, 2013 WL 3324049 at *13 (citing Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)). Accordingly, plaintiff's procedural due process claim must be dismissed.

## V. CONCLUSION

Hearing Officer Zerniak conducted "some examination of indicia relevant to [the confidential informant's] credibility." Giakoumelos, 88 F.3d at 61. Because the testimony this examination elicited satisfies the "some reliable evidence" standard that must be met in prison disciplinary proceedings, it is unnecessary to discuss whether defendants Rock or Prack might have been "personally involved" in rejecting McDonald's administrative challenges to his punishment. See, e.g., Wesolowski v. Harvey, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011) (rejecting supervisory liability claim where plaintiff failed to establish underlying constitutional violation).

In light of these conclusions, it is equally unnecessary to examine whether one or more of the defendants might nevertheless be entitled to qualified immunity. See, e.g., Woodard, 505 F. App'x at 57 ("Even if a disciplinary disposition is not supported by 'some evidence,' state officials are entitled to qualified immunity from civil liability for actions performed in the course of their duties insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

Therefore, it is

ORDERED that

1990), is a burden of proof that is distinct from, and "considerably stricter than[,] the Federal 'some evidence' standard" required to establish the sort of due process claim pressed by plaintiff in this case. Sowell, 2013 WL 3324049 at *13 (citing Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)). Accordingly, plaintiff's procedural due process claim must be dismissed.

## V. CONCLUSION

Hearing Officer Zerniak conducted "some examination of indicia relevant to [the confidential informant's] credibility." Giakoumelos, 88 F.3d at 61. Because the testimony this examination elicited satisfies the "some reliable evidence" standard that must be met in prison disciplinary proceedings, it is unnecessary to discuss whether defendants Rock or Prack might have been "personally involved" in rejecting McDonald's administrative challenges to his punishment. See, e.g., Wesolowski v. Harvey, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011) (rejecting supervisory liability claim where plaintiff failed to establish underlying constitutional violation).

In light of these conclusions, it is equally unnecessary to examine whether one or more of the defendants might nevertheless be entitled to qualified immunity. See, e.g., Woodard, 505 F. App'x at 57 ("Even if a disciplinary disposition is not supported by 'some evidence,' state officials are entitled to qualified immunity from civil liability for actions performed in the course of their duties insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

Therefore, it is

ORDERED that

1. Defendants Zerniak, Rock, and Prack's motion for summary judgment is GRANTED; and

2. Plaintiff McDonald's procedural due process claim is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: November 4, 2016.
Utica, New York.

United States District Judge